IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Katie Sue Fuller, | C/A No. 0:18-2042-RBH-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Andrew Saul, Commissioner of Social Security,[1] | |
| Defendant. | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Katie Sue Fuller, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted as the named defendant because he became the Commissioner of Social Security on June 17, 2019.

Page 1 of 18



Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).

# ADMINISTRATIVE PROCEEDINGS

In September 2014, Fuller applied for DIB, alleging disability beginning October 13, 2011. Fuller's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on June 22, 2017, at which Fuller appeared and testified and was represented by Michelle D. Powers, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision on August 11, 2017 finding that Fuller was not disabled from October 13, 2011 through the date last insured of December 31, 2015. (Tr. 16-31.)

Fuller was born in 1963 and was fifty-two years old on her date last insured. She has a ninth-grade education and past relevant work experience as a short order cook and a surveyor's assistant. (Tr. 187.) Fuller alleged disability due to fibromyalgia, arthritis, asthma, high cholesterol, bad nerves, and migraines. (Tr. 186.)

In applying the five-step sequential process, the ALJ found that Fuller had not engaged in substantial gainful activity from her alleged onset date of October 13, 2011 through her date last insured of December 31, 2015. The ALJ also determined that, through the date last insured, Fuller's mild degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, orthostatic hypotension, asthma, obesity, and fibromyalgia were severe impairments. However, the ALJ found that, through the date last insured, Fuller did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that, through the date last insured, Fuller retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) except she can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk six hours in an eight-hour day; sit for six hours in an eight hour day; except never climb ladders/ropes/scaffolds;

*PJG*

occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; must avoid concentrated exposure to respiratory irritants such as dust, fumes, gasses, etc.; frequent, but not constant overhead reaching bilaterally; frequent, but not constant handling and fingering.

(Tr. 20.) The ALJ found that, through the date last insured, Fuller was unable to perform any past relevant work, but that considering Fuller's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Fuller could have performed. Accordingly, the ALJ found that Fuller was not disabled from October 13, 2011 through the date last insured of December 31, 2015.

The Appeals Council denied Fuller's request for review on May 21, 2018, thereby making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589; see also Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing the evidence, the court may not

"undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Fuller raises the following issues for this judicial review:

1. Did the Commissioner err in upholding the decision of the ALJ finding that Claimant has a residual functional capacity for limited light work, which was clearly not supported by substantial evidence?

2. Did the Commissioner err in upholding the decision where the ALJ erroneously assigned significant weight to the opinion of the state agency medical consultant while assigning less weight to the treating and examining physicians?

3. Did the Commissioner err in upholding the ALJ's decision which fails to consider the combined effects of Claimant's impairments?

(Pl.'s Br. at 1-2, ECF No. 10 at 1-2.)

**DISCUSSION**[3]

**A.  Residual Functional Capacity Assessment**

A claimant's residual functional capacity ("RFC") is "the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case

---

[3] The court notes that numerous social security regulations and social security rulings (SSRs) have changed effective March 27, 2017. However, these changes specifically state that they are applicable to claims filed *on or after* March 27, 2017. See, e.g., 20 C.F.R. §§ 404.1513, 404.1527. Because the instant claims was filed before that time, all references in the instant Report and Recommendation are to the prior versions of the regulations and SSRs in effect at the time Fuller's application for benefits was filed, unless otherwise specified.



record. 20 C.F.R. § 404.1545(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity. Further, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016).

Fuller argues that the ALJ's determination that Fuller could stand and walk for up to six hours in an eight-hour work day is unsupported by substantial evidence. In support of this argument, Fuller directs the court to her testimony and the record reflecting her reports that are inconsistent with the ALJ's finding. For example, Fuller stated that she has difficulty standing and walking; she must elevate her legs during the day; she needed help dressing; and she is limited in her ability to complete household chores and drive. Fuller also points to the opinion evidence from Dr. Branham Tomarchio, a consultative examiner, indicating that he "thinks [Fuller] would have difficulty with standing for prolonged periods, walking long distances secondary to her morbid obesity" but that she "appear[s] to be able to sit without difficulty." (Tr. 491.) Fuller argues that this opinion is supported by Dr. Tomarchio's examination findings.

Additionally, Fuller argues that the ALJ noted that Fuller "has her most significant pain when engaging in physical activity." (Pl.'s Br. at 8, ECF No. 10 at 8) (citing Tr. 30). Fuller also directs the court to a report indicating she was unable to complete more than four and a half minutes of a

cardiac stress test because of fatigue and dyspnea (Tr. 583); her inability to sit through the hearing without standing; her use of a physician-prescribed cane; and her handicapped placard issued based on a medical opinion that Fuller is unable to walk more than one hundred feet without aggravating an existing medical condition. Lastly, Fuller argues that her inability to stand and walk for six hours is supported by her morbid obesity that Dr. Tomarchio found contributed to her limitations; her continued weight gain; her prescribed pain medications; and her diagnoses of Raynaud's disease, neuropathy, and edema.

As an initial matter, Fuller bears the burden of producing evidence demonstrating how her impairments affected her functioning during the relevant time period. See 20 C.F.R. § 404.1512(c); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Creegan v. Colvin, No. 1:13CV5, 2014 WL 3579659 (W.D.N.C. July 21, 2014) ("It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning."). Moreover, upon review of the record as a whole, the court finds that Fuller has not demonstrated that the ALJ's residual functional capacity analysis is unsupported by substantial evidence or controlled by an error of law. In compliance with applicable law, the ALJ provided an extensive narrative discussion, which included a full discussion of the medical and nonmedical evidence as well as the opinion evidence. (See Tr. 21-29.) The ALJ's discussion explained his resolution of inconsistencies or ambiguities of the evidence in the case record, such as his evaluation of Fuller's subjective complaints and evaluation of Dr. Tomarchio's opinion evidence, as well as the medical evidence and other opinion evidence. See, e.g., Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996) (explaining the two-step process for the consideration

of subjective complaints); 20 C.F.R. § 404.1529(c)(3) (listing the relevant factors for evaluating subjective complaints); 20 C.F.R. § 404.1527 (listing the relevant factors for evaluating medical opinion evidence).

Further, review of the ALJ's decision and analysis as a whole clearly reflects that the ALJ considered and evaluated the evidence addressed by Fuller among all the other evidence in the record. Fuller has failed to direct the court to any evidence that the ALJ failed to consider or to demonstrate that the ALJ's evaluation of her subjective complaints or Dr. Tomarchio's opinion was unsupported by substantial evidence or controlled by an error of law. The ALJ's decision reflects that, after summarizing all the relevant evidence, the ALJ found that Fuller was limited to a reduced range of light work; however, the evidence did not support further limitations.

Moreover, the court finds that Fuller's arguments essentially ask the court to again analyze the facts and reweigh the evidence presented, contrary to the substantial evidence standard of review that this court is bound to apply at this stage in the proceedings. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). Here, there is no indication that the ALJ "cherry-picked" the record, and the ALJ's decision reflects careful and thorough discussion of the evidence. Also, contrary to any argument by Fuller, the decision reflects specific support for the residual functional capacity assessment. Accordingly, review of the ALJ's opinion as a whole reflects that he sufficiently explained Fuller's residual functional capacity assessment and the basis for the limitations and restrictions included. Based on all of the foregoing, the court finds that Fuller has

failed to demonstrate that the ALJ's residual functional capacity assessment is unsupported by substantial evidence or controlled by an error of law.

**B.     Opinion Evidence**

Fuller next argues that the ALJ erred in giving greater weight to the opinion from a state agency reviewer than to her treating and examining physicians because the reviewer did not have the opportunity to review more recent records. Fuller also appears to argue that the ALJ erred in giving little weight to the opinions from the examining physicians, arguing that their opinions were consistent with the record and Fuller's testimony.

As an initial matter, it was not automatically reversible error to credit those opinions over Fuller's treating physicians. See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (finding that the testimony of a non-examining physician can constitute substantial evidence when it is consistent with the record); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); see also 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence").

Further, the law applicable to Fuller's application provides that regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources

because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See id. However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Instead, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. Moreover, ALJs are instructed to apply the above factors—including the length and nature of the source's treatment relationship with the claimant, the supportability of the opinion, the opinion's consistency with the other evidence in the record, whether the source is a specialist, and any other factors that may support or contradict the opinion—to all medical opinions, including those from consultative or one-time examiners. 20 C.F.R. § 404.1527(c).

Importantly, more weight is generally given to the opinions of an examining source than a non-examining one. Id. Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners. Id.

Fuller appears to specifically challenge the ALJ's evaluation of the opinions from Dr. Jonathan Berbin and Dr. Branham Tomarchio. With regard to these opinions, the ALJ found as follows:

> In December 2014, consultative examiner Dr. Tomarchio indicated he felt the claimant would have difficulty with standing for prolonged periods and walking long distances secondary to her morbid obesity. However, she did appear to be able to sit without difficulty. She also had normal fine and gross manipulative skills and could communicate without difficulty. (Ex. 7F/7).
>
> This opinion is afforded only some weight, as it is rather vague and does not provide specific functional limitations, limiting its usefulness for evaluating the claimant's residual functional capacity. However, greater weight has been provided to the portion of the opinion that states the claimant had normal fine and gross manipulative skills, as this conclusion is supported by the findings during the examination. For example, grip strength was 5/5 bilaterally and she appeared to have normal fine and gross manipulative skills. (Ex. 7F/6).
>
> . . . .
>
> On June 15, 2017, Dr. Berbin completed a medical source statement and indicated the claimant had been diagnosed with Raynaud's disease, limb pain, morbid obesity, pain in the shoulder, pain in the hand joint, and depression. He opined the claimant could work only two hours per day. Dr. Berbin further opined she could stand for 15 minutes at one time, but he circled "none" when asked how long she could stand in a workday. She could sit for two hours in a workday and for 30 minutes at one time. She could occasionally lift five pounds, but could frequently lift "none." She could never bend, stoop, or balance. She could frequently engage in fine manipulation with both hands, but could only occasionally engage in gross manipulation bilaterally. She could occasionally raise both arms over her shoulder. She needed to frequently elevate her legs during a workday. Dr. Berbin opined the claimant's pain was severe. She had marked restrictions in activities of daily living and maintaining social functioning. She also had deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere). He opined the claimant would need a job that permitted shifting

positions at will between sitting, standing, and walking. She would need to take unscheduled breaks lasting 15 minutes each. Her impairments were likely to produce "good days" and "bad days" such that she would be absent from work more than four days per month. (Ex. 15F). This opinion is afforded little weight, as it is not supported by the record.

First, as noted above, the claimant only began treating with Dr. Berbin on December 28, 2016 and the record contains only two treatment notes from Dr. Berbin. Second, as discussed above, objective findings during those visits were mostly normal, aside from some more significant swelling in the legs than normal. However, as previously noted, the claimant had not been taking her Lasix, which caused the increased swelling. Third, the rest of the claimant's treatment notes from Dr. Jennings at McCormick Family Practice do not support these extreme limitations. The claimant's pain was mostly stable throughout the record. However, even when she was experiencing more significant pain, this frequently coincided with the claimant engaging in a lot of physical activity. For example, in May 2014, she reported she had been doing a lot of work outside, and was now having moderate left knee pain. (Ex. 5F/71). In October 2014, she had been doing "quite a bit" of housework and thought she might have "overdone it." (Ex. 5F/85). In May 2016, she reported her joints hurt because she had been working in the yard. (Ex. 12F/25). Similarly, in April 2016, she was in more pain, but had run out of Lortab and Mobic. (Ex. 12F/32). In addition, although the claimant began developing edema in her legs in December 2015, she was started on Lasix and by February 2016, she had lost eight pounds, was feeling better, and her edema was improved. (Ex. 12F/34, 42).

(Tr. 27-29.)

Here, Fuller challenges the ALJ's statement that Dr. Tomarchio's opinion was "rather vague and does not provide specific functional limitations." However, review of his opinion reveals, contrary to Fuller's argument, that the opinion does not contain specific limitations; rather, it generally states that she would have difficulty with prolonged periods of standing or walking long distances. As to Dr. Berbin's opinion, Fuller argues that although Dr. Berbin had only examined her twice before issuing his opinion, Fuller had an extensive treatment history with Dr. Berbin's predecessor at the same practice. The ALJ's decision clearly reflects that he considered this fact;

however, the ALJ found that the treatment notes from Dr. Berbin's predecessor did not support Dr. Berbin's opined limitations.

Upon thorough review of the ALJ's decision and the record, the court disagrees with Fuller's challenges to the ALJ's findings and concludes that it is clear that the ALJ applied the relevant factors in evaluating the opinion evidence. Further, Fuller has failed to demonstrate that the ALJ's evaluation of these opinions is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted). As an initial matter, based on the regulations applicable to Fuller's application, the ALJ properly and explicitly considered the nature and frequency of each source's treatment relationship with Fuller as evidenced by the record and each source's specialty. See 20 C.F.R. § 404.1527(c). Moreover, the decision reflects that the ALJ offered reasonable bases in giving these opinions some or little weight. A review of the ALJ's decision as a whole reveals that the ALJ summarized and considered Fuller's medical records and reasonably found that the medical records did not support some of the limitations opined. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more

weight we will give that opinion."); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Based on the foregoing, Fuller has failed to demonstrate that the ALJ's conclusions regarding these opinions, as well as the state agency opinion, are unsupported by substantial evidence. In fact, it is clear that the ALJ, as part of his duties in weighing the evidence, properly considered these opinions in accordance with the applicable factors and legal authority. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Thus, the court finds that Fuller has not shown that the ALJ's decision with regard to the opinion evidence was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**C.     Combined Effects**

When a claimant has more than one impairment, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to be the basis of eligibility under the law. 20 C.F.R. § 404.1523. Further, in Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit explained:

> [T]his Court has on numerous occasions held that in evaluating the effect[] of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them. . . . As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.



Id. at 49-50 (internal citations omitted). However, "the adequacy requirement of Walker is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments." Brown v. Astrue, C/A No. 0:10-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) (citing Green v. Chater, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. 1995)).

> Most importantly, when multiple impairments are present, this Court must be satisfied that the ALJ's decision regarding disability is not founded on a fragmentized analysis of those impairments. If the ALJ's analysis is fragmentized, it is, of course, the Plaintiff's task to adequately show the Court that the ALJ's decision could have been different had [he] done an adequate combined effect analysis of Plaintiff's multiple impairments.

Cox v. Colvin, No. 9:13-CV-2666-RBH, 2015 WL 1519763, at *6 (D.S.C. Mar. 31, 2015) (internal citation omitted).

Fuller argues that the ALJ erred in failing to consider the combined effects of Fuller's knee and back problems coupled with her fibromyalgia and cardiac conditions. Fuller summarily argues that "the combined effects on [Fuller's] residual functional capacity would impede her ability to sustain substantial gainful employment." (Pl.'s Br. at 13, ECF No. 10 at 13.) However, contrary to Fuller's arguments, the court finds that during the course of the ALJ's opinion, the ALJ sufficiently discussed Fuller's alleged impairments and limitations to demonstrate that he considered Fuller's impairments in combination. Review of the ALJ's decision reveals that the ALJ extensively discussed the records, testimony, and opinion evidence regarding these alleged impairments. The ALJ stated that through the date last insured, Fuller "did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments . . . ." (Tr. 20.) Further, in analyzing Fuller's residual functional capacity, the ALJ discussed Fuller's medical

records at length, including medical findings and diagnostic images and testing results, as well as her testimony, and addressed conflicts in the records. The ALJ also stated that he limited her to a reduced range of light work in consideration of her long treatment history for "joint pain, fatigue, and episodes of syncope related to positional hypotension." (Tr. 29.) For these reasons, the court finds the ALJ's analysis sufficiently demonstrates that he considered the combined effect of Fuller's impairments. See Brown, 2012 WL 3716792, at *6 (finding that Fourth Circuit precedent issued after Walker suggested that Walker was not meant to be used as a trap for the Commissioner).

Moreover, even assuming Fuller is correct and the ALJ's statements throughout the opinion are not sufficient, Fuller has failed to explain how more discussion or explanation by the ALJ regarding the combined effects of her alleged impairments would change the outcome of this case.[4] See, e.g., Cox, 2015 WL 1519763, at *6 ("If the ALJ's analysis is fragmentized, it is, of course, the Plaintiff's task to adequately show the Court that the ALJ's decision could have been different had [he] done an adequate combined effect analysis of Plaintiff's multiple impairments."). Although Fuller may believe that additional limitations were warranted, she fails to specify them or detail any basis for them. Accordingly, based on a review of the decision as a whole, Fuller has failed to demonstrate that the ALJ failed to consider adequately her combined impairments and has not explained how the outcome would have differed with additional discussion; therefore, remand is not warranted on this basis. See, e.g., Glockner v. Astrue, C/A No. 0:11-955-CMC-PJG, 2012 WL

---

[4] As indicated above, "[i]t is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's [residual functional capacity]." Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003); see also Dollars v. Colvin, No. 5:14-CV-00048-FDW, 2014 WL 6666510, at *3 (W.D.N.C. Nov. 24, 2014) ("It is the claimant's burden, however, to establish his RFC by demonstrating how his impairment impacts his functioning.") (citing 20 C.F.R. §§ 404.1512(c), 416.912(c)).

PJG

4092618, at *5 (D.S.C. Sept. 17, 2012) (finding that the ALJ sufficiently discussed the plaintiff's alleged impairments and limitations to demonstrate that he considered the plaintiff's impairments in combination and observing that the plaintiff neither cited an impairment ignored by the ALJ nor offered any explanation as to how more discussion or explanation may have changed the outcome in the case).

## RECOMMENDATION

For the foregoing reasons, the court finds that Fuller has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

August 28, 2019  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).